[Civil No. 2137.   Filed October 13, 1924.]

[229 Pac. 397.]

# BENJAMIN RICE and ROSE RICE, Copartners Doing Business Under the Firm Name and Style of THE FRENCH SHOP, INC., Appellants, v. SANGER BROTHERS, a Corporation, Appellee.

1. CORPORATIONS—"DE FACTO CORPORATION" EXISTS WHERE BONA FIDE ORGANIZATION DEFECTIVE.—*"De facto* corporation" exists where there has been *bona fide* attempt to organize corporation, and honest user of corporate powers, but organization is defective.

2. CORPORATIONS—CORPORATION FORMED TO PERPETRATE ILLEGAL ACT NOT DISTINCT ENTITY FROM MEMBERS.—When incorporation is attempted to perpetrate fraud or illegal act, fiction that corporation is legal entity distinct from members will be disregarded, and parties dealt with as though no corporation were formed, especially where incorporators are *alter ego* of corporation, and persons sought to be held as partners are sole owners of capital stock and sole managers and directors of company.

3. PARTNERSHIP—FINDING OF FRAUD IN ORGANIZATION OF CORPORATION BY MEMBERS SUED AS PARTNERS HELD WARRANTED.—Evidence *held* sufficient to support finding of fraud in organization of corporation from its inception, so as to permit suit against its members as partners.

4. ATTACHMENT—JUDGMENT FOR PLAINTIFF AND ORDER FORECLOSING ATTACHMENT LIEN EQUIVALENT TO DENIAL OF MOTION TO QUASH WRIT.—Rendition of judgment for plaintiff and order foreclosing attachment lien, without mentioning motion to quash writ, is equivalent to denial of motion.

5. ATTACHMENT—AUTHORIZED IN ACTION FOR MONEY RECEIVED AND FOR DEBT, AS WELL AS FOR TORT AND BREACH OF CONTRACT—"DAMAGES."—Civil Code of 1913, paragraph 1393, authorizes attachment in suit for money had and received and for debt, as

---

1. What constitutes *de facto* corporation, see note in 118 **Am. St. Rep.** 253.  See, also, 7 **R. C. L.** 60.

2. Fiction of incorporation to evade law, see note in 1 **L. R. A.** (**N. S.**), 176.

3. Personal liability of members of *de facto* corporation, see note in 29 **Am. St. Rep.** 600; 15 Ann. Cas. 1144.  See, also, 7 **R. C. L.** 352.

well as for tort or breach of contract; "damages," defined as indemnity, recoverable by one sustaining injury to his person, property or relative rights through another's act or default, including sums recoverable in such actions.

See (1) 14 C. J., p. 214.   (2) 14 C. J., p. 61.   (3) 30 Cyc., p. 415. (4) 6 C. J., p. 457.   (5) 6 C. J., p. 75; 17 C. J., p. 710.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Frank H. Lyman, Judge. Affirmed.

Messrs. Jennings & Strouse and Mr. Joseph E. Morrison, for Appellants.

Miss Alice M. Birdsall and Mr. John L. Dyer, for Appellee.

CHAMBERS, Superior Judge.—Appellee brought this action, upon an account for goods, wares, and merchandise in the amount of $4,360.22, against the appellants, Benjamin Rice and Rose Rice, copartners doing business under the firm name and style of The French Shop, Inc. The answer of the appellants denies a partnership, and alleges that The French Shop, Inc., was a corporation; that the account sued upon was between the appellee and The French Shop, Inc., a corporation, and that the goods were sold and delivered to The French Shop, Inc., a corporation. The appellee, in a sworn reply to the answer of the appellants, denies that The French Shop, Inc., was a corporation but alleges that the purported attempted incorporation was part of a fraudulent scheme devised for the purpose of defrauding creditors, and that the alleged corporation was only a cloak or guise under which the appellants conducted a partnership business, in order to avoid personal liability. The cause was tried to the court without a jury.

The French Shop, Inc., was first a corporation organized under the laws of the state of Missouri, operating a store in the city of Phoenix, Arizona, during the year 1919. The sole stockholders of the Missouri corporation were the appellants, Benjamin and Rose Rice. During the fall of 1919 the appellants determined to dissolve this corporation and to organize a new corporation under the laws of the state of Arizona. In October, 1919, the Missouri corporation was dissolved and a firm of Phoenix lawyers was employed by the appellants to incorporate the Arizona corporation. The articles were prepared and filed with the Arizona Corporation Commission, and a certified copy thereof was recorded in the office of the county recorder of Maricopa county. Publication of the articles was duly made and an affidavit of publication filed with the Corporation Commission. The incorporation fee was not paid, and no certificate of incorporation was ever issued. No appointment of a statutory agent was ever filed, as required by law. After the appellants had filed the articles of incorporation in the office of the Arizona Corporation Commission and had the articles published and recorded in Maricopa county, they apparently took no further steps to perfect the record of the incorporation until April, 1921.

The appellants, after filing and publishing their articles, bought a seal and stock book and issued to themselves, 260 shares to Benjamin and 240 shares to Rose Rice, in stock of the purported corporation, capitalized at $50,000. These shares of stock were soon thereafter pledged to the National Bank of Arizona, in conjunction with Rice's life insurance and the long-time lease on the store where the business was being conducted, to secure a loan of $18,200. This loan was carried in the name of the French Shop, Inc. The lease stood in the name of Benjamin

Rice. There is a dispute as to whether this lease was ever transferred to The French Shop, Inc., but, at any rate, in June, 1921, this lease, valued in the financial statement of the preceding January at $15,000, was sold to a brother of the appellant, Benjamin Rice, for $2,500, and the proceeds placed in The French Shop funds. There does not appear to have been any direct transfer of tangible assets from the alleged incorporators to the so-called corporation. The books of The French Shop, Inc., were the same books under which the business started in Phoenix as a Missouri corporation. No balance was struck, and there was nothing indicating a change of ownership from the Missouri corporation to the Rices, nor from the Rices to an Arizona corporation.

During the year 1920 The French Shop, Inc., branched out. It had one store on East Washington Street known as "The French Shop," a store on Central Avenue known as "The Vogue," and a store on Adams Street known as "The Parisienne." These stores had separate books and carried separate bank accounts, checked against by Rice and his wife. There does not appear to have been anything indicating to the public that these last-named stores were the property of The French Shop, Inc.

In April, 1921, by-laws were drawn up and adopted by Benjamin Rice and Rose Rice, acting as sole stockholders of The French Shop, Inc. The minutes of meetings alleged to have been held at various times since 1919, including an alleged organization meeting of October, 1919, were written up and adopted; a notation appearing in the minute-book to the effect that the minutes were now for the first time reduced to writing and the by-laws adopted. We think that the record is sufficient to support a finding that no organization meeting was

ever held, no by-laws adopted, nor any minutes of meetings kept until some eighteen months after the alleged incorporation. It appears from the evidence that there was a lapse of from two weeks to thirty days from the time of the dissolution of the Missouri corporation until steps were taken toward the organization of an Arizona corporation.

During the course of the trial there was much testimony introduced on the subject of fraud. It is unnecessary to set forth the specific instances of fraud upon the part of the appellants during the year 1921. It is admitted that during the year 1921 gross frauds against the creditors of the alleged corporation were committed by the appellants. Their transactions during that year are honeycombed with fraud against the creditors of The French Shop.

Counsel for appellants seek to avoid liability upon the theory that the alleged corporation, notwithstanding the fact that no certificate of incorporation was issued, was a *de facto* corporation and that therefore parties dealing with the *de facto* corporation, believing that they were dealing with a corporation and not with a partnership, cannot afterwards repudiate the transaction with the corporation and recover against the stockholders as partners. Upon the other hand, appellee claims that this was not even a *de facto* corporation, and that, even though it was a *de facto* corporation, fraud was the purpose at its inception, and the appellants cannot avoid personal liability by taking the preliminary steps toward the organization of a corporation.

In the case of *Sawyer* v. *Pabst Brewing Co.*, 22 Ariz. 384, 18 A. L. R. 277, 198 Pac. 118, this court quotes with approval from *Alder Slope Ditch Co.* v. *Moonshine Ditch Co.*, 90 Or. 385, 176 Pac. 593, as follows:

"As to ability to transact business, corporations may be divided into three classes: First, *de jure* corporations, or those where the organization is entirely and legally perfected; second *de facto* corporations, where there has been a *bona fide* attempt to organize a corporation and a user of corporate powers, but the organization is defective; third, corporations not sufficiently organized to come within the latter class."

It is not the intention of this court to deviate from the doctrine laid down in the above case. It may be said, however, in defining a *de facto* corporation, that it is one where there has been a *bona fide* attempt to organize a corporation and an honest user of corporate powers; the organization being defective. In the Sawyer case, *supra,* it was conceded by both parties that the corporation was a *de jure* corporation. The facts in that case are therefore not parallel to those in the case at bar.

Aside from the question as to whether or not The French Shop, Inc., was a corporation *de facto*, in this case it appears to us that we should apply a rule which has received the recognition of textwriters and courts, generally, viz., that a corporation may not be formed for the purpose of perpetrating a fraud or other illegal act, under the guise of the fiction that a corporation is a legal entity, separate and distinct from its members. When this is attempted, the fiction will be disregarded by the courts, and the acts of the real parties dealt with as though no corporation had been formed. Cook on Corporations, vol. 3, 7th ed., § 663; *Donovan* v. *Purtell,* 216 Ill. 629, 1 L. R. A. (N. S.) 176, 75 N. E. 334; 14 C. J. 61, § 22, and cases cited.

The more is the reason for this rule where the incorporators are themselves the *alter ego* of the corporation, and the persons sought to be held as partners are the sole owners of the capital stock,

and the sole managers and directors of the company. In this case the Rices were themselves the corporation. While the evidence of fraud as to the original purpose of the organization of the corporation is not so direct and plain as to be conclusive, yet the facts and circumstances as they developed during the two years of appellants' operations in Arizona with The French Shop, Inc., taken in consideration in connection with the very controlling factor that the Rices were the sole owners of the capital stock, the sole directors and the sole managers of the corporation, are sufficient to support the finding of fact that there was fraud in the organization of The French Shop, Inc., from its inception. This court has time and again decided that, where there is substantial evidence in the record to support the findings of the lower court, these findings will not be disturbed.

Subsequent to the filing of the complaint, the appellee, on the seventh day of June, 1922, sued out a writ of attachment, and pursuant thereto levied upon certain personal property of the appellants. Appellants moved to quash the writ. A hearing was held upon the motion, and it was taken under advisement by the court. Apparently in rendering judgment the court ignored the motion to quash the attachment and ordered the attachment lien foreclosed. This was equivalent to a denial of the motion.

This writ of attachment was sued out under the second subdivision of paragraph 1393 of the Civil Code of 1913. Appellants assign the failure of the court to grant their motion to quash the attachment as error, basing their objection upon their claim that this is not a suit for damages, as contemplated by the statute. Paragraph 1393 of the Civil Code, so far as applicable, reads as follows:

"The plaintiff at the time of filing his complaint, or at any time afterward, may have the property of the defendant attached, as security for the satisfaction of any judgment that may be recovered, unless the defendant gives security to pay such judgment, as in this chapter provided, in the following cases: . . .

"(2)   When any suit be pending for damages, and the defendant is about to dispose of or remove his property beyond the jurisdiction of the court in which the action is pending for the purpose of defeating the collection of the judgment."

The argument of the appellants is that this action is for an alleged debt, and not for damages. We do not believe that the legislature contemplated this narrow definition of the term "damages." We prefer the legal definition given by Bouvier in his Law Dictionary, i. e.:

"The indemnity recoverable by a person who has sustained an injury, either to his person, property, or relative rights, through the act or default of another."

Under this definition, we conclude that the word "damages" includes sums recoverable in an action for money had and received, and for debt, as well as compensation for a tort or breach of contract. There was no error in denying the motion to quash the writ of attachment.

For the reasons assigned, the judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.

N. B.—Judge LYMAN being disqualified, Honorable W. R. CHAMBERS, Judge of the Superior Court of Graham county, was called to sit in his stead.