OPINION OF THE COURT
Dennis F. Bender, J.
Four-year-old Angellica Pesante was placed in the plaintiffs’ foster home by the Seneca County Department of Social Services (DSS) on January 31, 1997. She thereafter resided continuously with the plaintiffs until her tragic death on March *476 18, 1997, which was ruled accidental by the Tompkins County Coroner, Janice Ross, M.D. There is no question that Angellica died while in the plaintiffs’ care.
The plaintiffs were insured at the time of the child’s death by the defendant, and promptly provided it with notification of Amgellica’s death. In response, the defendant issued a letter disclaiming coverage, stating Angellica was an “insured” as defined under the subject policy. The plaintiffs were subsequently sued by the child’s estate and, again, the plaintiffs promptly notified the defendant of the lawsuit. Coverage was again disclaimed on the same ground, and the further ground that the incident arose from the plaintiffs’ “business pursuits”.
The plaintiffs brought an action for a declaratory judgment asking the court to find the defendant liable for the plaintiffs’ defense in the action. Both parties now move for summary judgment.
THE BUSINESS PURSUITS EXCLUSION
While the defendant extensively argues exclusion on the basis Angellica was an “insured” under the policy, it does not submit any meaningful opposition in its motion papers to the plaintiffs’ argument that the court should reject the “business pursuits” exclusion. This court finds that the defendant waived its right to assert the “business pursuits” exclusion by failing to notify the plaintiffs of such defense in a timely manner. (General Acc. Ins. Group v Cirucci, 46 NY2d 862, 864 [1979]; Haslauer v North Country Adirondack Coop. Ins. Co., 237 AD2d 673, 674 [3d Dept 1997].) It is noted the defendant did not attempt to assert this defense until more than a year past its original denial and has offered no rationale for the delay in alleging such exclusion upon this motion. Since the plaintiffs have no burden to show prejudice to them (Allstate Ins. Co. v Gross, 27 NY2d 263, 269 [1970]), there is no bona fide issue requiring a trial.
THE “INSURED” EXCLUSION
Under the policy in question, personal liability coverage is not available for bodily injury to an insured. The policy defines “insured” as:
‘You, and the following who regularly live at the residence premises:
“a. Your relatives
“b. Any other persons under age 21 and in the care of you or your relatives” (emphasis added).
*477 Angellica’s age, and that she lived with, and was in the care of, the Mundells is not in dispute. The plaintiffs argue rather that the child did not “regularly” live with them. The defendant argues the opposite.
The question thus is as follows: Does the word “regularly” lend ambiguity under the facts of the case? This question appears to be one of first impression in New York.
It is axiomatic that “the insurer bears the burden of establishing the applicability of an exclusion, and any ambiguity in an exclusion must be strictly construed against the insurer.” (Allstate Ins. Co. v Noorhassan, 158 AD2d 638, 639 [2d Dept 1990].) The defendant argues this is clearly met by the simple fact of Angellica’s continued presence in the home from January 31, 1997 until her death, and with no indication it would have terminated but for her death. Cases in other jurisdictions support the conclusion, it says, citing State Farm Fire & Cas. Co. v Breazell (324 SC 228, 478 SE2d 831 [1996]), Prudential Prop. & Cas. Ins. Co. v LaMarr (92 Ohio App 3d 331, 635 NE2d 63 [1993]), Country Mut. Ins. Co. v Peoples Bank (286 Ill App 3d 356, 675 NE2d 1031 [1997]), Jenks v State of Louisiana (507 So 2d 877 [La Ct App 1987]), and A.G. v Travelers Ins. Co. (112 Wis 2d 18, 331 NW2d 643 [1983]). The court disagrees.
The bulk of the cases cited by the defendant involved periods of protracted placement, or at least an intent that it be protracted, as evinced by placement under a court order for a definite time period. While permanency is not required, “the intended duration of the relationship is a necessary element in deciding whether a person is a resident of a household” (A.G. v Travelers Ins. Co., supra, 112 Wis 2d, at 21, 331 NW2d, at 645). In the within matter, Angellica had only been at the Mundells for IV2 months, and her continued placement with them was unclear. What the facts before this court do establish is that the Mundells were having difficulties with Angellica’s behavior, and had called the Department of Social Services for help on at least six occasions during her short stay with them.
Further, while neither party submitted information regarding the circumstance surrounding Angellica’s placement, the court takes judicial notice of the Family Court proceedings concerning the child. Placement occurred with the Mundells following an emergency Department of Social Services’ removal on January 31, 1997. Her care was continued by the court with DSS on a temporary basis, although not necessarily with the Mundells, pending a fact-finding hearing. The hearing was not *478 held prior to Angellica’s death. Thus, there was no final order of placement regarding the child, and it is unknown even had placement been continued, whether Angellica would have continued to reside with the Mundells.
The court believes it important as well to keep in mind the purpose behind allowing for exclusion of residents of a household from coverage: “ ‘ “to exempt the insurer from liability to those persons to whom the insured, on account of close family ties, would be apt to be partial in case of injury.” ’ ” (A.G. v Travelers Ins. Co., supra, 112 Wis 2d, at 20, 331 NW2d, at 644-645.) The idea is to protect “insurers from situations where an insured might not completely cooperate and assist an insurance company’s administration of the case.” (Supra, 112 Wis 2d, at 21, 331 NW2d, at 645.)
Such is hardly a concern here.
The court also finds it curious that while the defendant strenuously argues the language is unambiguous, it fails to cite cases, some of which involve itself (ox an affiliation thereof), where the similar or identical language has been addressed. (See, for example, Sligh v Nationwide Mut. Ins. Co., 1996 WL 527329, 1996 Del Super LEXIS 325 [Del Super Ct, Aug. 19, 1996, Del Pesco, J.]; Nationwide Mut. Fire Ins. Co. v Smith, 1998 WL 433941, 1998 Del Super LEXIS 199 [Del Super Ct, Apr. 2, 1998, Quillen, J.]; Fisher v Novak, 1990 WL 82159, 1990 Del Super LEXIS 218 [Del Super Ct, June 11, 1990, Lee, J.], affd sub nom. State Farm Fire & Cas. Co. v Fisher, 599 A2d 414 [1991]; Nationwide Mut. Ins. Co. v Budd-Baldwin, 947 F2d 1098 [3d Cir 1991]; Nationwide Mut. Ins. Co. v Diehl, 768 F Supp 140, 141 [ED Pa 1990].)
In Nationwide v Budd-Baldwin (supra, at 1103), the court did not find the language ambiguous on the facts involved before it, but noted “We need not decide how the definition [‘regularly lives’] might be applied to other scenarios or whether it is ambiguous as applied to other factual circumstances.” The court also noted other courts had found the language ambiguous, citing Nationwide Mut. Ins. Co v Diehl (supra) and Davis v State Farm Mut. Auto. Ins. Co. (583 So 2d 225, 228 [Ala 1991]; see also, Vanguard Ins. Co. v Racine, 224 Mich App 229, 568 NW2d 156 [1997]).
In Sligh v Nationwide Mut. Ins. Co. (supra, 1996 WL 527329, 3, 1996 Del Super LEXIS 325, *7), the Superior Court of Delaware noted that “[p]olicy language is ambiguous when it is reasonably susceptible of different interpretations or two different meanings.” The court went on to say, “To ‘live with’ could mean *479 either ‘to reside with, to dwell permanently and continuously with’ as State Farm urged, or ‘to occupy a home with, to dwell with,’ as the plaintiff urged.” (Supra, 1996 WL 527329, 3, 1996 Del Super LEXIS 325, *10.) The court found the language ambiguous due to questions of permanence and continuity. In Nationwide Mut. Ins. Co. v Diehl (768 F Supp, supra, at 144) the court was even more emphatic: “A precise definition of [the word] ‘regular’ * * * remains elusive.”
"While not determining the words “regularly lives” to be in all cases ambiguous, this court finds they are here, based upon the particular facts of the case. The court further notes: (1) the policy behind allowing “family” exclusions in insurance coverage is not applicable on these facts, and (2) Nationwide wrote the ambiguous language. It could have included a definition of “regularly live” in the contract. Indeed, it has been on notice for nearly a decade that the language is problematic.
The plaintiffs also moved to dismiss the defendant’s other defenses raised in its answer and for permission to use their own attorneys, at the defendant’s expense, to defend them in the action brought by the estate of Angellica Pesante. Neither party, however, addressed the specific merits, or lack thereof, of the other defenses raised in the defendant’s answer. The defendant failed to address the issue of whether a conflict exists, rendering independent counsel appropriate in the defense of the estate action. Consequently, these requests are denied, without prejudice.