116 COMMONWEALTH CONDOMINIUM TRUST *vs.* AETNA
CASUALTY & SURETY COMPANY.

Suffolk. January 8, 2001. - February 13, 2001.

Present: GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Insurance,* Insurer's obligation to defend, Construction of policy. *Indemnity.*
*Contract,* Insurance. *Consumer Protection Act,* Insurance. *Words,*
"Damages."

The provisions of a directors and officers indorsement to a general liability
insurance policy unambiguously stated that the insurer did not have a duty
to defend against any claim [376], and where the underlying action on
which indemnification was sought was an equitable action involving injunc-
tive relief, the exclusion provision barring payment for claims other than
money damages operated to bar coverage [376-378].
There was no basis for an unfair insurance settlement practices claim, where
the insurer had correctly interpreted its policy in denying a claim. [378]

CIVIL ACTION commenced in the Superior Court Department on
November 7, 1997.

The case was heard by *Margaret R. Hinkle,* J., on a motion
for summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*J. Allen Holland* for the plaintiff.

*J. Kenneth Griffin* for the defendant.

COWIN, J. This case has its genesis in a "directors and officers
liability" indorsement to a general liability insurance policy
(D&O policy). The plaintiff, 116 Commonwealth Condominium
Trust (trust), filed a complaint against its insurer, Aetna Casualty
and Surety Company (Aetna), alleging that Aetna breached its
obligations under the trust's insurance policy by failing to
reimburse the trust for legal fees and costs incurred in defend-
ing a Land Court action that had been brought against the trust's
board of trustees. The trust also claimed that Aetna's conduct in
denying coverage violated G. L. c. 93A and G. L. c. 176D. A
Superior Court judge granted Aetna's motion for summary

judgment. We transferred the case to this court on our own motion. We affirm.

1. *Background.* We summarize the undisputed facts before the Superior Court. The trust's D&O policy indorsement, entitled "Directors and Officers Liability Owners Association Claims Made Form," provides, in pertinent part, that:

"A. INSURING AGREEMENT

"1. We will reimburse you for 'loss,' in excess of the Retained Limit shown in the Schedule below, which you become legally obligated to pay due to any civil claim(s):

"a. made against your 'Directors' or 'Officers'; and

"b. caused by a 'wrongful act'.

"2. We will pay, in excess of the Retained Limit shown in the Schedule below, for 'loss' which an 'insured' becomes legally obligated to pay due to any civil claim(s):

"a. made against the 'insured'; and

"b. caused by a 'wrongful act'.

"  . . . .

"B. EXCLUSIONS

"1. This insurance does not apply to any claim:

"  . . . .

"e. for anything other than money damages. . . .

"D. CONDITIONS

"  . . . .

"3. Defense of Claims: Cooperation

"We will not be called to assume charge of the settlement or defense of any claim or 'suit' brought or proceeding instituted against you or any 'insured'. We will have the right and be given the opportunity to be involved, at our own expense, in the defense of any claim or 'suit.' In that event, you and any

'insured' will cooperate with us in all things in the defense of the claim. You and any 'insured' will not, except at your own cost, voluntarily make a payment, assume any obligation or incur any 'defense expenses' without our consent, which will not be unreasonably withheld.

"    . . . .

"5. Loss Payable.

"Recovery under this endorsement will not be made until your liability or an 'insured's' liability has been:

"a. rendered fixed and certain by final judgment; or

"b. admitted by us in writing."

During the term of the policy, Richard Gleicher, an owner of a unit at 116 Commonwealth Avenue, in Boston, filed an action in the Land Court against the trust's board of trustees. Gleicher's complaint alleged that the trustees wrongfully prohibited him from obtaining access to an adjoining unit and certain common areas in order to connect a gas line to his unit. He sought relief in the form of a preliminary and permanent injunction that would allow him access to the adjoining unit and common areas. Gleicher's complaint included a request for costs and attorney's fees, but it did not request monetary damages.[1]

Six days after receiving service of Gleicher's complaint, the trust forwarded the complaint to Aetna, informed Aetna of its retention of a law firm, and requested coverage under the D&O policy. Shortly thereafter, a judge in the Land Court issued a preliminary injunction, ordering the trustees to allow Gleicher reasonable access to the units and common areas for the purpose

---

[1]Gleichner's complaint prayed for a judgment:

"1. Preliminarily and permanently ordering the unit owner(s) of Unit C of the 116 Commonwealth Condominium Trust to permit access to the unit as is reasonably necessary for the purpose of installing and maintaining a gas utility line for heat servicing Unit E, and approving the recording of a memorandum of lis pendens against Unit C;

"2. Issuing an order of notice on prayer one returnable at the Court's earliest available date;

"3. Awarding costs and attorneys' fees herein;

"4. Granting such other and further relief as the Court may deem meet and just."

of installing his gas line. Subsequently, Aetna advised the trust to take whatever steps it deemed appropriate and necessary to protect its interests while Aetna investigated the trust's request for coverage. The trust forwarded its legal bills incurred in the Land Court action to Aetna. Aetna eventually denied coverage and the trust responded with a c. 93A demand letter, to which Aetna responded. The trust then filed the present lawsuit in the Superior Court. The Superior Court granted Aetna's motion for summary judgment on the ground that the D&O policy did not cover expenses incurred in the Land Court action for equitable relief and that, based on this lack of coverage, Aetna had not violated G. L. c. 93A or c. 176D.[2]

2. *Duty to defend.* "Interpretation of an insurance policy is no different from interpretation of any other contract." *Citation Ins. Co.* v. *Gomez*, 426 Mass. 379, 381 (1998). In the absence of an ambiguity, we will "construe the words of the policy in their usual and ordinary sense." *Id.*, quoting *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 280 (1997). The trust's insurance policy states, in pertinent part, that Aetna "will not be called to assume charge of the . . . defense of any claim or 'suit' . . . instituted against [the trust] or any 'insured.' " The language is clear and unambiguous: Aetna does not have a duty to defend the trust or its trustees.

3. *Duty to indemnify.* The policy's "Insuring Agreement" states "[Aetna] will reimburse you for 'loss' . . . ." "Loss" is defined as "adjudicated damages, settlements and 'defense expenses.' " "Defense [e]xpenses" are defined as "reasonable and necessary legal fees and expenses incurred in defense of claims or 'suits,' and a "[s]uit" is defined as "a civil proceeding in which damages to which this insurance applies are alleged."

The trust contends that the policy's coverage for loss incurred by suits for "damages" is ambiguous and therefore should include the equity action bought by Gleicher. We see no such ambiguity in the word "damages." This Commonwealth defines damages as "the word which expresses in dollars and cents the injury sustained by the plaintiff." *Turcotte* v. *DeWitt*, 333 Mass. 389, 392 (1955). See *Travelers Ins. Co.* v. *Waltham Indus. Lab. Corp.*, 722 F. Supp. 814, 828 (D. Mass. 1988) (noting definition of damages), aff'd in part and rev'd in part, 883 F.2d 1092 (1st

[2]At the time of the Superior Court's grant of summary judgment, Gleicher's Land Court action was still pending.

Cir. 1989). This definition comports with that of other jurisdictions. See, e.g., *Aetna Cas. & Sur. Co.* v. *Hanna*, 224 F.2d 499, 503 (5th Cir. 1955) ("damages" defined as "pecuniary compensation or indemnity"); *Jaffe* v. *Cranford Ins. Co.*, 168 Cal. App. 3d 930, 935 (1985) (" 'Damages' describes a payment made to compensate a party for injuries suffered"); *Ladd Constr. Co.* v. *Insurance Co. of N. Am.*, 73 Ill. App. 3d 43, 46-47 (1979) (nuisance action, as equitable remedy, does not constitute action for money damage to property); *Jones* v. *Farm Bur. Mut. Ins. Co.*, 172 Mich. App. 24, 29 (1988) ("damages" cannot encompass strictly injunctive action).[3] Our cases are clear that "damages" is the word that expresses in dollars and cents the plaintiff's injury.

Even if the term "damages" were ambiguous, any ambiguity in the "Insuring Agreement" section is dispelled by the "Exclusions" section that directly follows: "This insurance does not apply to any claim . . . for anything other than money damages." Reading this policy language, the trust could not reasonably expect that the policy would cover an action for injunctive relief that did not seek money damages.[4] See *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990), citing *Home Indem. Ins. Co.* v. *Merchants Distribs., Inc.*, 396 Mass. 103, 107 (1985).

The trust seeks support from our decision in *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, *supra*, which concluded, in a different context (the environmental protection area), that "damages" are the expenses incurred for the cleanup of existing conditions, whereas expenses incurred in complying with an injunction against future activities are not deemed to be

---

[3]Black's Law Dictionary (7th ed. 1999) defines "damages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury . . . ." *Id.* at 393. Webster's Third New International Dictionary (1993) similarly defines the term as "the estimated reparation in money for detriment or injury sustained." *Id.* at 571.

[4]We note also that a complaint for purely equitable relief that includes counts seeking costs or attorney's fees is not a complaint seeking money damages. See *Jones* v. *Farm Bur. Mut. Ins. Co.*, 172 Mich. App. 24, 29 (1988). *McDonough* v. *Liberty Mut. Ins. Co.*, 921 S.W.2d 90, 94 (Mo. Ct. App. 1996). A request for attorney's fees and costs is merely incidental to the substantive claim for equitable relief. If we were to conclude otherwise, any claim for equitable relief could be converted into an action for "damages" by the inclusion of standard "boilerplate" requests for attorney's fees in cases when there is no legal basis for an award of attorney's fees.

"damages." *Id.* at 698. The *Hazen* case is consistent with our decision today.

4. *Claims under G. L. c. 93A and G. L. c. 176D.* The trust sought damages under G. L. c. 93A and G. L. c. 176D alleging that Aetna unfairly delayed its decision to deny coverage and refused "to provide a defense . . . indemnity . . . or reimbursement of defense costs . . . in bad faith and not based on any reasonable interpretation of the [p]olicy." In light of the summary judgment and our affirming that judgment, these claims fail because Aetna's interpretation of the D&O policy was not only reasonable, but correct. See *Gulezian* v. *Lincoln Ins. Co.,* 399 Mass. 606, 613 (1987).[5]

*Judgment affirmed.*

---

[5]Even assuming the policy covered the Land Court action, the trust's claims would fail because the trust could not have suffered injury from an alleged delay in coverage decision or payment when payments had not yet become due under the policy. See G. L. c. 93A, § 11; *Frank Cooke, Inc.* v. *Hurwitz,* 10 Mass. App. Ct. 99, 111 (1980), quoting *Frank J. Linhares Co.* v. *Reliance Ins. Co.,* 4 Mass. App. Ct. 617, 620-621 (1976) (plaintiff must show "loss of money or property" for claim under G. L. c. 93A, § 11). Cf. *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.,* 388 Mass. 671, 678 (1983) (plaintiff must suffer injury or "be adversely affected" by violation of G. L. c. 176D, § 3[9], in order to recover under G. L. c. 93A, § 9).