LUMBERMENS MUTUAL CASUALTY COMPANY *vs.* OFFICES
UNLIMITED, INC.; FEDERAL INSURANCE COMPANY, third-
party defendant.

Middlesex. December 8, 1994. - February 9, 1995.

Present: ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Civil*, Summary judgment. *Insurance*, Coverage, Construction of
policy, Motor vehicle insurance. *Estoppel. Consumer Protection Act*,
Insurance. *Words*, "Private passenger automobile."

The term "private passenger automobile" as used in an employers' non-
ownership liability endorsement included in a standard policy of motor
vehicle insurance was not ambiguous and did not encompass within its
meaning a pickup truck; as a result the policy did not cover the use by
an employee of the insured of a pickup truck, not owned by the insured,
in the business of the insured, where the use of such a vehicle was not
"occasional and infrequent." [465-467]
There was no merit to a claim in an action on an insurance contract that
liability should be based on principles of estoppel where there was no
evidence of any reliance to any party's detriment. [467-468]
In circumstances where an insurer in good faith and in a timely manner
denied coverage of a claim based on a legally correct interpretation of
its policy and where the insured could not demonstrate it had suffered a
"loss of money or property," there was no factual basis for a finding of
any violation of G. L. c. 93A. [468-469]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 28, 1989.

The case was heard by *Judith A. Cowin*, J., on motions for
summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Kevin M. Truland* for the plaintiff.

*Robert P. Powers* (*Michael R. Byrne* with him) for the
defendants.

419 Mass. 462                                        463

Lumbermens Mutual Casualty Co. *v.* Offices Unlimited, Inc.; Federal Insurance Co.

LYNCH, J. This appeal arises from an insurance coverage dispute, which also prompted allegations of unfair and deceptive business practices, pursuant to the Consumer Protection Statute, G. L. c. 93A, § 11 (1992 ed.). Lumbermens Mutual Casualty Company (Lumbermens) filed an action seeking a declaration that its insurance policy with Offices Unlimited, Inc. (OUI), did not cover an automobile tort claim against one of OUI's employees. In response to Lumbermens' complaint, OUI filed a counterclaim against Lumbermens alleging violations of G. L. c. 93A and G. L. c. 176D.[1] OUI also filed an action against Federal Insurance Company (Federal) seeking a declaration that insurance provided by Federal would apply in the event that Lumbermens' does not, or that Lumbermens' coverage is not adequate. Federal also filed an action seeking a declaration of the rights and responsibilities of the parties and that, in handling the investigation and defense of the underlying action, Lumbermens breached its fiduciary obligations to Federal and to OUI.

Arising from these various claims, three separate summary judgments were issued, two of which are currently before us. On January 5, 1993, a judge allowed OUI's and Federal's joint motion for summary judgment on Lumbermens' declaratory relief action. Lumbermens filed a timely notice of appeal. On July 1, 1993, the same judge allowed Lumbermens' motion for summary judgment on OUI's counterclaim, alleging that Lumbermens violated G. L. c. 93A. OUI and Federal filed a timely notice of appeal.[2] We transferred the case here on our own motion. We reverse the order of January 5, 1993, and affirm the order of July 1, 1993.

---

[1]The defendants advance no separate argument based on G. L. c. 176D, and, therefore, we confine our discussion to G. L. c. 93A.

[2]The summary judgment issued by the court on April 10, 1990, dismissed Lumbermens' declaratory complaint against OUI and declared that Federal was the real party in interest in the coverage dispute. Federal joins with OUI in urging that Lumbermens violated G. L. c. 93A. Therefore, it is not necessary for us to comment on the procedural distinction in light of our conclusion that summary judgment was appropriate on the c. 93A counterclaim.

In January, 1988, Gary E. Rand was struck by a 1987 Ford F-150 pickup truck which was owned and operated by an employee of OUI.[3] When the accident occurred, the OUI employee was transporting furniture to OUI's Natick store. At the time of this motor vehicle accident, Lumbermens insured OUI under a standard Massachusetts motor vehicle and physical damage policy issued for the period January 1, 1988, through January 1, 1989, with a limit of one million dollars. Part of this policy included an employers' nonownership liability endorsement. Additionally, Federal insured OUI under a commercial umbrella liability policy issued for the policy period November 1, 1987, through November 1, 1988. In its declaratory relief action, Lumbermens requested that the judge rule that the underlying action fell outside the scope of its insurance policy. In support of this request, Lumbermens argued that the employee's pickup truck constituted a "non-owned" automobile of the commercial type used on more than an occasional and infrequent basis in the employer's business and, therefore, pursuant to the policy's employers' nonownership liability endorsement, coverage was not available.

OUI and Federal sought summary judgment on their respective claims. On April 10, 1990, in ruling on OUI's motion for partial summary judgment, the judge found that OUI's liability in the underlying action will be covered by either Lumbermens' policy or Federal's policy and that OUI has no real interest in the outcome of Lumbermens' declaratory action. Therefore, the judge dismissed Lumbermens' case against OUI and ordered that the defense shall be assumed by Federal as the real party in interest. With respect to OUI's counterclaim against Lumbermens, alleging violations of G. L. c. 93A, the judge ruled that this claim raised a question of fact and, therefore, denied OUI's motion for summary judgment.

---

[3]The declaratory relief action also named Gary E. Rand, his wife Marilyn Rand, and his children Russell J. and Rebecca C. Rand, as party defendants. These defendants are not part of this appeal.

The order of January 5, 1993, granted summary judgment in favor of OUI and Federal, with respect to Lumbermens' declaratory judgment complaint. A second judge ruled that a pickup truck qualified as a private passenger automobile and, therefore, that Lumbermens' coverage applied. The judge denied the joint motion for summary judgment on the c. 93A action.

In the judgment of July 1, 1993, the same judge ruled that, even assuming Lumbermens' actions were deceptive with respect to OUI, OUI cannot demonstrate that it has suffered a loss of money or property within the meaning of G. L. c. 93A, § 11. Therefore, the judge allowed Lumbermens' motion for summary judgment.

*Policy interpretation.* Summary judgment shall be granted where there are no material facts in dispute, and the moving party is entitled to judgment as a matter of law. See *Cassesso* v. *Commissioner of Correction*, 390 Mass. 419, 422 (1983); Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). There are no material facts in dispute relevant to whether the terms of Lumbermens' policy afford coverage for the tort claim. The resolution of this issue depends on the proper interpretation of the term "private passenger automobile" as it is used in the policy's employers' nonownership liability endorsement, and, therefore, raises only a question of law. *Massachusetts Bay Transp. Auth.* v. *Allianz Ins. Co.*, 413 Mass. 473, 476 (1992), citing *Nelson* v. *Cambridge Mut. Fire Ins. Co.*, 30 Mass. App. Ct. 671, 673 (1991).[4] There is no question that the pickup truck was a "non-owned" vehicle being frequently used in OUI's business. The crucial question is, therefore, whether the truck is a "private passenger auto-

---

[4]The policy provides in pertinent part:

"2. Application of Insurance.

". . .

"b. The insurance applies only to the use, by any person other than the named insured, of any non-owned private passenger automobile in the business of the named insured as stated in the declarations, and to the use in such business, by an employee of the named insured, of any non-owned automobile of the commercial type if such use of such automobile is occasional and infrequent."

mobile" within the terms of Lumbermens' policy. The judge ruled that the term "private passenger automobile" is not clearly defined, and therefore, the policy is ambiguous. Because the language of the policy is within the control of the insurer, the judge construed the policy strictly against the insurer and found that the pickup truck is included as a private passenger automobile. We conclude that the term "private passenger automobile" is not ambiguous and that the truck was not covered under Lumbermens' policy.

We recognize that an ambiguity exists in an insurance contract when the language contained therein is susceptible of more than one meaning. *Ober* v. *National Casualty Co.*, 318 Mass. 27, 30 (1945). However, an ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other.[5] *Jefferson Ins. Co.* v. *Holyoke*, 23 Mass. App. Ct. 472, 475 (1987), citing *Southern Constr. Co.* v. *United States*, 364 F.2d 439, 453 (Ct. Cl. 1966). We conclude that the term "private passenger automobile" is clear and unambiguous and that its plain and ordinary meaning does not include a pickup truck. See *Johnsen* v. *Harper*, 213 Neb. 145, 147 (1982); *Ohio Casualty Ins. Co.* v. *Tyler*, 85 Ill. App. 3d 410, 413 (1980); *Concord General Mut. Ins. Co.* v. *Hills*, 345 F. Supp. 1090, 1096 (S.D.Me. 1972). Certainly the plain meaning of the term "pickup truck" suggests that it is not an automobile of the private passenger type, designed primarily for transporting persons. See *Hall* v. *Gamble Alden Life Ins. Co.*, 34 Ill. App. 3d 837, 838-839 (1975).

Even though we conclude that the term "private passenger automobile" is clear and unambiguous, we recognize that

---

[5]The defendants argue and the motion judge pointed out that the policy only defines "private passenger motor vehicle" and does not specifically define "private passenger automobile". However, the policy defines both "motor vehicle" and "automobile" as a land motor vehicle or trailer, indicating that the terms can be used interchangeably. Additionally, the language of the endorsement states, " 'motor vehicle' or 'automobile' wherever used in the policy, with respect to the insurance afforded under this endorsement, shall include 'non-owned automobile.' " This language also supports the conclusion that the words are used interchangeably.

words, which are clear by themselves, may become ambiguous when read in the context of an insurance policy. See *Save-Mor Supermarkets, Inc.* v. *Skelly Detective Serv., Inc.*, 359 Mass. 221, 226 (1971). In this case, however, the context of the policy does not create ambiguity but rather further clarifies the term. The endorsement states that coverage applies to a "non-owned" private passenger automobile and to any "non-owned" automobile of the commercial type used infrequently or occasionally in OUI's business. Although "commercial type" vehicle is not specifically defined, it is clear that the policy is making a distinction between vehicles designed primarily to carry passengers and vehicles designed primarily to carry goods. This conclusion is further supported by the fact that the pickup truck was registered as a commercial vehicle.

Although it is not necessary for us to look at how the vehicle was being used in order to resolve the coverage question, see *Ohio Casualty Ins. Co.* v. *Tyler*, *supra* at 414, citing *Hall* v. *Gamble Alden Life Ins. Co.*, *supra* at 838-839; *Marshall* v. *Washington Nat'l Ins. Co.*, 246 N.C. 447, 448 (1957), in this instance, the way in which this pickup truck was used supports the conclusion that it does not qualify as a private passenger automobile. The employee-owner of the truck testified that the sole purpose for purchasing the truck was to expedite the transport of products between locations. He further testified that he used the truck for transporting furniture almost on a daily basis. Prior to purchasing the truck, the employee informed OUI that he would like to buy a truck to use for the benefit of the customers of OUI. After purchasing the truck, OUI paid the employee two hundred dollars a month to defray the cost and expenses of the truck. Additionally, at the time of the accident, the employee had furniture in the back of the pickup truck, and he was on his way to drop off the furniture at OUI's Natick location. Lumbermens' policy did not cover the pickup truck in question.

*Estoppel.* OUI and Federal argue that, even if the specific terms of Lumbermens' policy do not cover the underlying action, Lumbermens should be held liable based on the princi-

ples of estoppel. This argument is without merit. In order to succeed on an estoppel theory, it must be shown that one has been induced by the conduct of another to do something different from what otherwise would have been done and that harm has resulted. See *DiMarzo* v. *American Mutual Ins. Co.*, 389 Mass. 85, 112 (1983) (O'Connor, J., concurring), citing *Lunt* v. *Aetna Life Ins. Co.*, 261 Mass. 469, 471 (1928). There is no evidence in this case that OUI relied to its detriment on any of Lumbermens' actions. As soon as Lumbermens was notified of the underlying motor vehicle accident, it began an investigation of the circumstances of the accident. From the outset, Lumbermens informed OUI that there was an issue as to whether Lumbermens' policy applied to the underlying action. Additionally, since Federal was determined to be the real party in interest in this dispute, Federal was informed of all settlement negotiations in the underlying action. In April, 1990, Federal and Lumbermens settled the underlying action, within the limits of Lumbermens' policy, and no judgment was entered against OUI. Federal and Lumbermens satisfied the settlement amount and OUI was not liable for any of the settlement. Even assuming some sort of adverse reliance on the part of OUI existed, no harm could have arisen from it.

*General Laws c. 93A.* An insurance company which in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy cannot ordinarily be said to have committed a violation of G. L. c. 93A. *Gulezian* v. *Lincoln Ins. Co.*, 399 Mass. 606, 613 (1987). See *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 675-678 (1983). In this case, Lumbermens went beyond a mere plausible interpretation of the policy and denied coverage based on a legally correct interpretation of the policy. In such circumstances there are no facts that support a claim that Lumbermens acted unfairly or deceptively. Neither could OUI satisfy its burden of proving that it has suffered a "loss of money or property" within the meaning of G. L. c. 93A, § 11. *Baldassari* v. *Public Fin. Trust*, 369 Mass. 33, 45 (1975). OUI's reliance on *DiMarzo* v. *American*

*Mut. Ins. Co.*, 389 Mass. 85, 94-95 (1983), is misplaced. Here, a judgment never entered against OUI and OUI did not have to pay any of the loss. There is no violation of G. L. c. 93A.

We reverse the order of January 5, 1993, granting summary judgment on the declaratory judgment action, and affirm the order of July 1, 1993, granting summary judgment on the c. 93A claim.

*So ordered.*