**EQUINOX SOFTWARE SYSTEMS, INC., Plaintiff,**

v.

**AIRGAS, INC., Defendant.**

No. Civ.A. 96–3399.

United States District Court, E.D. Pennsylvania.

May 18, 2001.

James C. McConnon, Frank J. Bonini, Jr., Mohammad S. Rahman, Paul and Paul, Philadelphia, PA, for plaintiff.

Everett McCord Clayton, Melissa Bergman Squire, Dechert, Price and Rhoads, Philadelphia, PA, Bernard J. Bonn, III, Matthew A. Porter, Timothy C. Blank, Elaine Wallace, Dechert, Price and Rhoads, Boston, MA, Glenn S. Gitomer, McCausland, Keen and Buckman, Radnor,

PA, Kara W. Swanson, Dechert, Price and Rhoads, Princeton, NJ, for defendant.

## MEMORANDUM AND ORDER

EDUARDO C. ROBRENO, District Judge.

**AND NOW,** this **21st** day of **May 2001,** after a hearing with counsel for both parties, it is hereby **ORDERED** that plaintiff Equinox Software Systems, Inc.'s motion for a new trial is **DENIED.**

It is **FURTHER ORDERED** that defendant Airgas, Inc.'s motion for the entry of judgment is **DENIED.** The court's order is based on the following reasoning:

In 1997, a jury found that defendant Airgas Inc. did not breach a licensing agreement that it had with plaintiff Equinox Software Systems, Inc. to use plaintiff's computer software. The court stayed the entry of judgment pending the resolution of an arbitration proceeding between the two parties, which concerned a services agreement providing under what circumstances defendant could hire plaintiff's former employees to service the software plaintiff licensed to defendant. The arbitration panel found that defendant had breached the services agreement and directed defendant to pay the costs of the proceeding, but did not award any damages or attorneys' fees to plaintiff. Before the court is plaintiff's motion for a new trial on defendant's alleged breach of the licensing agreement, and defendant's motion for the entry of judgment. For the reasons stated below, plaintiff's motion is denied, and defendant's motion is granted.

### I. *Plaintiff's Motion for a New Trial*

■ Plaintiff first argues that the court's instruction to the jury on the distinction between material and technical breach was erroneous under Massachusetts law, the governing law of the contract. "A material breach of contract by one party excuses the other party from performance as [sic] matter of law." *Hastings Assoc., Inc. v. Local 369 Building Fund, Inc.,* 42 Mass.App.Ct. 162, 675 N.E.2d 403, 411 (1997). As a default rule, a mere technical breach of a contract, as opposed to a material breach, by a party does not excuse the nonbreaching party from performance. *See Milona Corp. v. Piece O' Pizza,* 1 Mass.App.Ct. 839, 300 N.E.2d 926, 927 (1973) (distinguishing defendant's noncompliance with the notice provision from "mere technical failure"). The parties to the contract, however, may agree to substitute their own conditions precedent for terminating the contract and thus contract around the default rule. *See Lotto v. Commonwealth,* 369 Mass. 775, 343 N.E.2d 855, 857 (1976) (stating that where the contract provided that permit could be revoked at any time that "is in the best interests of the Commonwealth," the "plaintiff's right to continue operation of the marine [under the contract] was expressly limited by the terms of the very contract from which that right derived").

■ In the contract at issue in this case, Section 10.05 provides that:

> If any party fails to comply with *any term or condition* under this Agreement, and has not cured such default within thirty (30) days after receipt of written notice (or commenced to cure where cure within thirty (30) days is not reasonable), the notifying party shall be entitled in addition to any other rights it may have under this Agreement or otherwise under law, to terminate this Agreement by giving notice to take effect immediately.

Pl.'s Compl. License Agreement § 10.05 (emphasis added). Plaintiff contended at trial that the phrase "any term or condition" provided that, with proper notice, a party could terminate the contract for a

technical as well as a material breach of the contract. On the other hand, defendant argued that "any term or condition" merely referred to the default rule requiring a material breach, and that the purpose of § 10.05 was to give the breaching party an opportunity to cure the breach.

The court determined that § 10.05 was ambiguous because "the phraseology c[ould] support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken," *Suffolk Constr. Co., Inc. v. Lanco Scaffolding Co., Inc.,* 47 Mass.App.Ct. 726, 716 N.E.2d 130, 133 (1999), and thus presented a jury question, *see id.* at 132 (discussing how the trial judge's determination that the contract was ambiguous dictated that the jury resolve the ambiguity). The court instructed the jury that

> [a] person may breach a contract by failing to perform a contractual obligation or duty when that performance is called for. Not every non-performance, however, is to be considered a breach of the contract. *Unless the parties expressly make technical performance a condition of the contract,* a failure to perform a contractual obligation must be substantial rather than a minor or technical failure in order to constitute a breach.

Trial Tr. (6/18/97) at 33–34 (emphasis added). This instruction did not, contrary to plaintiff's argument, instruct the jury it could only find that the contract was breached if the non-performance alleged was material. Instead, the phrase "[u]nless the parties expressly make technical performance a condition of the contract," *id.,* alerted the jury to the parties' right to contract around the default rule requiring a material nonperformance for the con-

tract to be deemed "breached." That phrase thus directed the jury to determine whether the term "any term or condition" in § 10.05 constituted an express agreement to make technical performance a condition of the contract, as plaintiff alleged that it did.

By including this phrase in the jury instruction, the court correctly stated the applicable Massachusetts rule that parties to a contract may agree that mere technical nonperformance constitutes a breach of the contract. Because the jury found, however, that defendant did not breach the contract, and defendant admitted that it did not comply with the notice provision contained in § 2.01 of the contract,[1] the jury necessarily found that § 10.05 did not constitute an express agreement between the parties that technical non-performance of duties under the contract was sufficient to effect a breach of the contract. Accordingly, the jury instruction, read as a whole, does not misstate the law of contracts in Massachusetts. *See Smith v. Borough of Wilkinsburg,* 147 F.3d 272, 275 (3d Cir. 1998) (requiring courts to consider "whether the charge, taken as a whole, properly apprises the jury of the issues and the applicable law").

■ Plaintiff also contends that the court erred in charging the jury that:

> In this matter, *there is a dispute as to the meaning of the terms contained in Sections 2.01, 2.02, and 8.03 of the license agreement.* If you find that the parties at the time the contract was made had the same understanding of these terms, then you shall give that meaning to those terms. Where, however, the parties at the time the contract was made had different meanings in

---

1. Section 2.01 of the license agreement requires defendant to notify plaintiff if it relocates one of its licensed copies of plaintiff's software. Defendant admits that it failed to do so.

mind about those terms, then you shall give that meaning which you find to be most reasonable, taken [sic] into consideration under all the circumstances which are present in this case. The intention of the parties, the words the parties use, the purpose the parties sought to achieve, custom in the trade, the parties' course of dealings, the parties' course of performance, and whether a party at the time the contract was entered into, knew or should have known that the other party interpreted the terms differently.

Trial Tr. (6/18/97) at 34–36 (emphasis added). Plaintiff contends that although the terms of § 2.01 may have been "in dispute," they were not ambiguous, and therefore should not have been subject to a jury charge on interpreting ambiguous contract provisions.

■ Plaintiff is correct that the mere fact that the meaning of a term is disputed does not make the term ambiguous, *see Lumbermens Mut. Casualty Co. v. Offices Unlimited, Inc.,* 419 Mass. 462, 645 N.E.2d 1165, 1167 (1995) (providing that "an ambiguity is not created simply because a controversy exists between parties"), and that § 2.01 of the license agreement is not ambiguous, at least as to defendant's duty to give plaintiff notice when it moves a copy of plaintiff's software to another location.[2] Section 2.01 was not "in dispute" because it was ambiguous, however, but rather because the parties contested whether defendant's violation of § 2.01's notice provision constituted a breach of the contract under § 10.05. Defendant admitted at trial that it did not give notice as required under § 2.01, but argued that this oversight was a mere technical breach of the contract.

As previously discussed, plaintiff contended that § 10.05 should be read to grant either party the right to terminate the contract following the other's technical breach. On the other hand, defendant took the position that § 10.05 merely restated the default rule in Massachusetts that a party can terminate a contract only where the other party has committed a material breach of the contract. Therefore, the court's statement to the jury that § 2.01 was "in dispute" did not signal to the jury that it needed to resolve some ambiguity concerning § 2.01, and thus was not erroneous. To the extent that the court's statement was confusing or misleading to the jury, the court finds that, taken as a whole, the jury instruction "properly apprise[d] the jury of the issues and the applicable law." *Smith v. Borough of Wilkinsburg,* 147 F.3d at 275.

■ Plaintiff's final contention that it is entitled to a new trial because of newly discovered evidence. According to plaintiff, this new evidence is a computer tape, the contents of which proves that defendant installed a copy of plaintiff's software on the computer located in the home of Robert Connor, a former employee of plaintiff who subsequently worked on plaintiff's software on behalf of defendant. In order to grant a new trial on the basis of newly discovered evidence, the new evidence in question: (1) must be material and not merely cumulative; (2) could not have been discovered through the exercise of reasonable diligence; and (3) would probably have changed the outcome of the trial. *See Compass Technology v. Tseng Lab.,* 71 F.3d 1125, 1130 (3d Cir.1995).

In this case, plaintiff did not exercise reasonable diligence in seeking out this

---

**2.** Section 2.01 provides that "[Equinox] hereby grants to [Airgas] a non-exclusive and non-transferable license to use the Licensed Program and Materials at [Airgas's] location … or any other location which may replace it and of which [Airgas] shall give [Equinox] notice fourteen (14) days prior to such relocation".

"new" evidence. Plaintiff could have discovered the evidence in one of two ways. First, the computer tape was held by the clerk of this court for six months prior to trial. Plaintiff was aware of the tape's existence and location, and could have petitioned the court for leave to inspect the contents of the tape, but declined to do so. Second, plaintiff could determined whether its software was ever installed on Connor's computer by simply asking its own employee, Fernando Escamilla, who had first hand knowledge of the location of alleged extra copy of the software. Inexplicably, plaintiff only asked Escamilla about the location of the disputed copy of the software after the trial. The court thus finds that plaintiff failed to exercise reasonable diligence in searching for the evidence prior to trial.

██ Plaintiff's argument based on the newly discovered evidence also fails because the new evidence would not likely have changed the outcome of the trial. *See Compass Technology,* 71 F.3d at 1130. The Wiscomp tapes upon which plaintiff relies only establishes that at some point, a copy of plaintiff's software was installed on the computer of Robert Connor. It is true that at trial, Connor had denied that such a copy had in fact been installed. The evidence does not prove, however, that the software was installed on Connor's computer at the same time that it was installed at Wiscomp headquarters, which plaintiff claims would have violated the license agreement.[3] Because the evidence does not prove that defendant violated the license agreement, the court finds that the new evidence most likely would not have affected the outcome of the trial.

██ Plaintiff also claims that this newly discovered evidence points to a fraud on the court perpetrated by defendant, its lawyers, and Connor. The mere fact that Connor gave erroneous testimony at trial, the falsity of which was readily discoverable by plaintiff had it exercised reasonable diligence, does not constitute clear and convincing evidence of a conspiracy to commit fraud on the court. *See Bethel v. McAllister Bros., Inc.,* No. CIV. A.91–2032, 1994 WL 328350, at *3 (E.D.Pa. July 11, 1994) (stating that a party alleging fraud in support of a motion to reopen a judgment must demonstrate such fraud by clear and convincing evidence) (citing *Brown v. Pennsylvania R.R. Co.,* 282 F.2d 522, 527 (3d Cir.1960)). Plaintiff's claim that it has not had the opportunity to uncover more evidence of the alleged conspiracy because it has not taken discovery directed at uncovering the conspiracy is without merit, because the gravamen of plaintiff's claim was that defendant conspired with Connor, plaintiff's former employee, to use plaintiff's software in violation of the licensing agreement between the two parties. Therefore, the court finds that plaintiff has not shown by clear and convincing evidence that defendant committed a fraud on the court.

For the reasons stated above, plaintiff's motion for a new trial is denied.

## II. *Defendant's Motion for the Entry of Judgment*

██ The remaining issue before the court is whether the entry of judgment is appropriate at this time. Judgment should not be entered where there is an unresolved request for attorneys' fees aris-

---

**3.** Defendant also contends that even if copies of the software resided on both Connor's and Wiscomp's computers at the same time, there was no violation of the license agreement because the contract allowed defendant to make an extra copy for the purpose of "enhancing" the software, without that copy counting toward the 20 copy maximum permitted under the terms of the contract.

ing from a provision of a contract at issue in the case. *See Gleason v. Norwest Mortgage, Inc.*, 243 F.3d 130, 137 (3d Cir.2001) ("stating that when attorneys' fees are part of the contractual damages at issue on the merits, a District Court's order delaying quantifying the amount of such fees is non-final for purposes of appeal"). On the other hand, "[w]hen an outstanding claim for attorneys' fees is by a statutory prevailing party, the unresolved issue of those fees does not prevent judgment on the merits from being final." *Id.* In this case, defendant previously submitted a motion for attorneys' fees and costs arguing that it was entitled to such relief under both the contract and the Copyright Act. *See* doc. no. 223. That motion was denied by the court without prejudice, and defendant has indicated its intention to reassert that motion.[4] Because defendant's claim for attorneys' fees and costs is based at least in part on the contract at issue in the case, and to avoid the potential for piecemeal appeals arising out of the case, *see Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080, 1090 (3d Cir.1988) (noting the Third Circuit's "longstanding antipathy to piecemeal appeals"), the court finds that the entry of judgment is not appropriate. Accordingly, defendant's motion for the entry of judgment is denied.

**AND IT IS SO ORDERED.**

---

4. The court also denied plaintiff's motion for contempt damages, attorneys' fees and costs without prejudice. *See* doc. no. 318. The court will grant both parties leave to reassert their respective motions.